IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mekiel Mitchell, #232904, | ) Civil Action No. 3:06-0054-TLW-JRM |
| Petitioner, | ) |
| v. | ) |
| Colie Rushton, Warden of McCormick Correctional Institution; and Henry McMaster, Attorney General of the State of South Carolina, | ) **REPORT AND RECOMMENDATION** |
| Respondents. | ) |

Petitioner, Mekiel Mitchell ("Mitchell"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment for murder. He filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on January 4, 2006.[1] Respondents filed a Return and Motion for Summary Judgment, supported by copies of portions of the state court record, on May 11, 2006. Because Mitchell was pro se at that time, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on May 24, 2006. Mitchell's motions to extend time for him to respond were granted, and he filed an opposition memorandum through counsel on August 29, 2006. A hearing was held on December 15, 2006.[2]

**Procedural History**

Late on the afternoon of December 15, 1995, during a drug deal gone bad, Kenneth Judy was murdered in Charleston County. Witnesses saw two men firing into Judy's pickup truck as he attempted to leave the area. An automobile found at the scene belonged to Mitchell's sister and was

---

[1] This is the Houston v. Lack, 487 U.S. 266 (1988) delivery date. See Order of January 18, 2006.

[2] Mitchell was not present for the hearing.

connected forensically and by a witness to Mitchell.  He was arrested on December 18, 1995 and charged with murder.[3]  (App. 712).

After two days of testimony and approximately nine hours of deliberation, the jury found Mitchell guilty on May 22, 1996.  A direct appeal was filed presenting the following issues:

> I..     THE TRIAL JUDGE ABUSED HIS DISCRETIONARY POWERS IN REFUSING A RECESS UNDER ANY CIRCUMSTANCES DUE TO THE ILLNESS OF DEFENSE COUNSEL DURING TRIAL.
>
> II.     THE TRIAL JUDGE COMMITTED ERROR IN CHARGING MANSLAUGHTER AS A LESSER INCLUDED OFFENSE OF MURDER WHEN THERE WERE NO FACTS ON RECORD TO SUPPORT SUCH A CHARGE AND THE CHARGE WAS OBJECTED TO BY THE DEFENDANT.
>
> III.    THE TRIAL JUDGE ABUSED HIS DISCRETION IN REFUSING TO ENFORCE A SUBPOENA TO THE SOLICITOR FOR EXCULPATORY MATERIAL OF IN THE ALTERNATIVE TO REVIEW THE MATERIAL IN CAMERA FOR RELEVANCE.
>
> IV.    CUMULATIVE ERROR AND THE TOTALITY CIRCUMSTANCES COMBINED TO DENY THE DEFENDANT DUE PROCESS AND A FAIR TRIAL.

(App. 408).  The conviction was affirmed by the South Carolina Supreme Court.  See State v. Mitchell, 440 S.C. 189, 498 S.E.2d 642 (1998).

Mitchell filed an application for post-conviction relief on October 2, 1998 (App. 499).  An evidentiary hearing was convened on January 22, 2001. (App. 540).  Mitchell was represented by counsel, appeared, and testified.  On May 17, 2001, the PCR court issued its Order of Dismissal (App. 668).  Mitchell filed a Petition for Writ of Certiorari through the South Carolina Office of Appellate Defense raising the following issues:

---

[3] A co-defendant, Michael Brown, was also charged.

> I..   Whether trial counsel's ineffective representation while he was suffering from migraine headaches violated petitioner's Sixth Amendment right to counsel such that prejudice should be presumed.
>
> II.   Whether trial counsel was ineffective for failing to object to a witness's speculative testimony about petitioner's dealing drugs after the judge ruled the testimony inadmissible.
>
> III.  Whether trial counsel was ineffective for failing to object to the state's bolstering of its witness.
>
> IV.   Whether trial counsel was ineffective for failing to request a mere presence charge when the judge decided to charge accomplice liability.
>
> V.    Whether the presence of multiple errors satisfies the prejudice prong of <u>Strickland</u>, *infra*, because petitioner did not receive a trial whose result is reliable.

The South Carolina Supreme Court affirmed dismissal of the PCR. <u>Mitchell v. State</u>, Mem. Op. No. 2005-MO-038 (Filed August 15, 2005).

## **Grounds for Relief**

In his present petition, Mitchell asserts that he is entitled to a writ of habeas corpus on the following grounds:

> *1.   Whether state court made an unreasonable finding when it concluded that the trial judge did not abuse his discretionary powers in refusing a recess for trial counsel who was clearly suffering an illness and who made it known, prior to trial, that concessions would have to be made in order to effectively provide Petitioner effective assistance of counsel under the Sixth Amendment of the U.S. Constitution?*
>
> *2.   Whether state court unreasonably found that the lower court was within it's [sic] bounds to constructively amend Petitioner's indictment in violation of Petitioner's Fifth and Fourteenth Amendment rights of the U.S. Constitution?*
>
> > *a.   Petitioner was placed on notice of the charge of murder. In the information it alleges that Petitioner willfully and feloniously killed and murdered the alleged victim. Petitioner sought to defend himself against this allegation only. At the conclusion of trial, however, after*

3

> *both the State and defense rested, the State requested and received an instruction on the "hands of one is the hands of all" theory which constituted a "surprise" on the defense. Petitioner was indicted as the sole perpetrator with no indication of a co-defendant in the information. This theory allowed the State to (1) lessen its burden of proof and; (2) broaden the possibility of conviction of Petitioner in violation of his Fifth and Fourteen Amendment rights of the U.S. Constitution. The State has a burden to prove beyond a reasonable doubt the allegation that it ascribed in Petitioners indictment and information. The State conceded that it failed to prove Petitioner's guilt beyond all reasonable hypothesis when it stated that "This Court finds that there was a factual basis from which a jury could infer that the co-defendant had fired shots, and that potentially it was the co-defendant that fired the fatal shot." (See PCR Tr. p. 5).*
>
> *Petitioner has no co-defendants, nor was there any testimony from any of the State's witnesses that they saw an alleged co-defendant fire any shots. The trial court lessened the State's burden of proof when it constructively amended Petitioner's indictment by charging the hands of one is the hand of all theory in violation of Petitioner's Fifth and Fourteenth Amendment rights of the U.S. Constitution.*

3. <u>Whether State unreasonably found that counsel did not provide Petitioner with ineffective assistance of counsel and prejudice Petitioner in violation of the Sixth and Fourteenth Amendment of the U.S. Constitution when counsel failed to object to State's witnesses testimony attacking Petitioner's character and failed to move for a mistrial?</u>

   > a. *On the first day of trial defense counsel made a motion to prohibit the prosecution from making any references to drugs or drug money upon ground that it was unclear and purely speculative as to the motive of the alleged crime and would go towards his clients character. The Hon. Larry Patterson granted the motion and instructed the prosecution to inform their witnesses not to mention anything about drugs or else they would be charged with contempt of court. (Trial Tr. p. 28, II. 1-3). However, during direct examination state's witness, Linda Erway, stated "I saw Mekiel (Petitioner) hand deceased some drugs, that's what it looked like and that's what it was." (See trial Tr. p. 228, ll. 22-25).*
   >
   > *Judge Patterson obviously granted Petitioner this motion out of concern that such characterization of events would unduly attack Petitioner's character as evidenced from the following inquiry by the judge. "Okay, the question is, does it go to the — does it go to his character solely, or it is so tied up into this alleged offense that it cannot be separated for it to make sense to the*

4

>*jury? (Tr. p. 26) rejecting the State's proposition that the evidence was admissible (Tr, p. 26, it 16-25: p. 27, 1L 1-4). The judge went on to state 'Okay. Well you don't have to ask her why she was in the neighborhood. Just she was there, factually, and she saw it, and she saw that he snatched something, without saying what it is. Now, if Mr. Archer asks her why she was in the neighborhood, that's a different matter okay?" (Tr. p. 27, Il. 5-9).*
>
>*The court went on further to say "If nobody ever knew what it was that was snatched, then I think we'd better exclude it, because she can testify as to exactly factually what happened, but not speculation as to what it was or anything like that." (Trial Tr. p. 27, ll.. 16-19)>*
>
>*Upon the court's granting of the in limine motion, the judge made a determination that the probative value of the evidence did not outweigh its unfair prejudice. The solicitor did not make any proffer to seek to a change in the court's ruling. Therefore the prosecution violated the court's order, to Petitioner's prejudice and trial counsel was ineffective in failing to object and move for a mistrial. When asked at Petitioner's PCR hearing why he did not object, counsel testified "It went right past me." (PCR Tr p. 32, l. 9). Accordingly, the State's finding is without merit and counsel's errors deprived Petitioner of his Sixth and Fourteenth Amendment rights of the U.S. Constitution.*

   4.   <u>*Whether the state court was in error for finding that counsel did not violate Petitioner's Sixth Amendment right to effective representation and prejudiced Petitioner when counsel failed to object to the State bolstering out it's [sic] own witness?*</u>

   a.   *DURING DIRECT EXAMINATION OF JAMES WILLIAMS, THE FOLLOWING EXCHANGE OCCURRED:*

   *Solicitor:     Did you subsequently give a written statement to the police?*

   *Williams:     Yes.*

   *Solicitor:     And what did you say in the statement? Anything different from what you just testified to?*

   *Williams:     No the same thing I'm saying now.*

*(App. p. 219, p. 219, ll. 17-22).*

   *Trial counsel admitted at the PCR hearing that he should have objected to this bolstering of the witness. App. p. 587, l. 10-p. 588, l. 21.*

5

> *Rule 80(d) (l) (B), SCRE, only perm its evidence of a prior consistent statement when the witness has been charged with recent fabrication or improper motive or influence. The State should not have introduced hearsay testimony of William's prior consistent statement before Petitioner even had a chance to imply recent fabrication or improper influence or motive. <u>State v. Saltz</u>, 346 S. C. 114, 124, 551 S.E.2d 240, 245 (2001).*
>
> *Furthermore, "erroneously admitted corroboration testimony is not harmless merely because it is cumulative. On the contrary, it is precisely this cumulative effect which enhances the devastating impact of improper corroboration." <u>Id.</u> (Internal citations omitted). Petitioner was prejudiced by his counsel's failure to object because evidence of his guilt was not overwhelming.*

5. <u>Whether the state court erred in violation of Petitioner's Sixth and Fourteenth Amendment rights and prejudiced Petitioner when it concluded that the judge did not abuse his discretion in refusing to enforce the defense's subpoena for criminal files of Linda Erway from the solicitor or in the alternative having an in camera inspection of those files as they were exculpatory under the authority of Brady v. Maryland and no other grounds existed for quashing the subpoena?</u>

   a. *The State Court found that no prejudice resulted from the State refusing to turn over the criminal files of a State witness, Linda Erway.*

   *Linda Erway was a career criminal offender who has a long history of felony arrest and conviction namely giving false information to officers and other State officials. At the time of Erway's arrest she gave a different description of Petitioner and stated that she could not identify Petitioner as a shooter. Had those files been turned over Petitioner could have shown that Erway had been arrested and convicted more than the 3 or 4 times she alleged on the witness stand and Petitioner would have had the right to probe further into those charges to show the jury her business as a witness as well as her testimony was not credible. This denial of Erway's criminal file along with the judge's abuse of discretion in limiting Petitioner's cross-examination of Linda Erway violated the Confrontation Clause of the 6th Amendment right and Due Process of Law.*

6. <u>Whether the S.C. Supreme Court erred when it failed to find Petitioner's counsel was ineffective and that such ineffectiveness prejudiced Petitioner by denying him his 6th Amendment rights when counsel failed to request a mere presence charge when the fudge decided to charge accomplice liability?</u>

   a. *Petitioner contends that the accomplice liability charge was an inappropriate instruction which served to place Petitioner at the scene of the crime despite Petitioner's defense of alibi. It further lessened the State's burden of proof in*

6

> *proving that it was Petitioner and not someone else that committed the murder. The accomplice liability instruction suggested to the jury that evidence had been adduced at trial of Petitioner's presence at the scene of the crime. Once the judge decided to charge accomplice liability, the Petitioner was entitled to a mere presence instruction that would have balanced out the State's prejudicial injection of the accomplice liability charge.*

7. <u>Whether state court erred in concluding that trial counsel did not render ineffective assistance and prejudice. Petitioner in violation of Petitioner's 6th and 14th Amendment rights when counsel failed to object to improper jury instructions which invited the jury to indulge in and begin premature deliberations?</u>

   a. *On the first day of trial, before breaking for lunch, the trial judge gave instructions to the jury inviting them to begin deliberations, prematurely. (Trial Tr. p. 77, 11. 15-19).*

   *Again on the second day of trial, the trial judge invited the jury to begin premature deliberations. (Trial Tr. p. 374, ll. 13-14). In both instances counsel rendered ineffective assistance when he failed to object to the judge's invitation to the jury. Counsel's action or inaction has prejudiced Petitioner in violation of his 6th and 14th Amendment right.*

8. <u>Whether the State's highest court erred when it failed to find that counsel ineffective representation while he was suffering from migraine headaches violated Petitioner's 6th Amendment right to counsel such that prejudice should be presumed?</u>

   a. *Petitioner contends that the case of <u>Florida v. Nixon</u>, 534 U.S. ___, 125 S.Ct. 868 (2005) relied on by the S.C. Supreme Court to deny Petitioner's Writ of Certiorari was applied incorrectly to Petitioner's particular circumstances. In Nixon, Nixon contends that counsel's <u>trial strategy</u> denied him effective assistance of counsel such that prejudice should be presumed. The U.S. Supreme Court, however, ruled that Nixon's trial attorney's strategy was within the confines of reasonableness. Here, Petitioner is not arguing rather or not counsel's <u>trial strategy</u> was deficient, but that his <u>overall trial performance</u> while suffering a sever illness greatly hampered counsel's ability to provide effective assistance during critical stages of Petitioner's trial. At Petitioner's PCR hearing, counsel admitted to his ability to effectively represent his client due to his illness. Counsel admitted to his thought process being impaired, his speech at times during critical stages being incohesive and incoherent. Counsel admitted to his inability to deal with matters that came up quickly in the trial like witnesses making statements that he failed to object to. Counsel further testified that at times*

7

> *his mind went blank and he was needing to ask. Counsel admitted to missing objections to preserve issues for appeal. In total, Petitioner's trial counsel recognized the fact that his medical illness prevented him from effectively representing Petitioner at critical stages of trail which amounted to a "total breakdown in the adversarial process" which requires the Court to presume prejudice. The S.C. Supreme Court incorrectly applied Nixon to Petitioners' prejudice.*

9. <u>*Whether the state court erred in finding that the trial judge did not commit prejudical error in violation of Petitioner's 6th and 14th Amendment rights when trial judge charge manslaughter as a lesser included offense of murder when there were no facts on record to support such a charge and charge was objected to by Petitioner?*</u>

   a. *During the charging of the jury, the State represented that the jury be charged with the law of manslaughter, over trial counsel's objections. Petitioner's defense was alibi. On direct appeal, the Court ruled that this was harmless error and did not prejudice Petitioner because the jury found him guilty of the greater offense of murder. However, Petitioner asserts that it allowed the jury to infer that the Court found evidence of Petitioner's presence at the scene of the crime despite Petitioner's sole defense of alibi. Thus, the manslaughter instruction prejudiced Petitioner's alibi defense by is harmful and prejudicial inference in violation of Petitioner's 6th and 14th Amendments rights.*

10. <u>*Whether the state court erred when it unreasonably found that trial judge did not abuse his discretion when he admitted into evidence a box of shell casings over Petitioner's objection, which prejudiced Petitioner in violation of his 5th, 6th, and 14th Amendment rights?*</u>

    a. *The Petitioner objected to the admission into evidence of spent shell casings and the box of cartridges found in the Cadillac. The Petitioner contends that the State failed to adequately establish both a chain of custody and direct relevance of his evidence to the alleged crime. These items of evidence were a critical portion of the State's circumstantial case against Petitioner.*

       *The Petitioner could not prevent the State from attempting to lay a foundation for admission fo [sic] this evidence. On the other hand, had the admissibility of this evidence been denied then the Petitioner would have been in a position to move to strike testimony concerning this evidence and to prevent comment in the State's closing argument.*

       *In addition to the problems with chain of custody, the State failed to prove that (a) the fatal shots were fired by a 9mm pistol; (b) that the shell casings*

> *on the ground matched the bullets found in the victim or his truck; or (c) that the casings found were fired at the time of the death as opposed to having been fired in whole or part at a prior time.*
>
> *There was a question as to whether this evidence had any relevance to the case since no adequate foundation was laid. If relevant at all, the relevancy was clearly outweighed by the lack of probative value and the prejudicial effect.*

11. *Whether the state court erred when it failed to find that trial counsel provided ineffective assistance to counsel in violation of Petitioner's 6th and 14th Amendment rights which unduly prejudiced Petitioner when counsel failed to subpoena police officers for defense to impeach State's witnesses?*

    a. *On December 17, 1995, State witness, Linda Erway, gave a statement to police officers Jamison and grimes [Grimes] stating she did not know or see the face of the perpetrator and that she could not identify the perpetrator in a photo review. Her initial description was not of Petitioner. However, a week before trial and after she fired her attorney who was representing her on her pending felony charges, she identified the Petitioner as the shooter and her testimony was much different than that of her initial statements to Det. Jamison and Grimes. At trial, the jury requested to hear Erway's testimony and the testimony of other witnesses again while deliberating, which attests to the fact that the jury was considering the credibility of witnesses testimony. Since Erway had given different testimony at trial than she had gave to Det. Jamison and Grimes immediately after allegedly witnessing the shooting. counsel should have subpoena the two detectives to impeach the credibility of Erway and his failure to do so unduly prejudiced Petitioner in violation of Petitioner's 6th and 14th Amendment rights to the U.S. Constitution.*

12. *Whether the state court erred when it failed to find that Petitioner's trial counsel provided ineffective assistance which unduly prejudiced Petitioner in violation of Petitioner's 5th, 6th and 14th Amendment rights when counsel failed to specify in detail his objection to the manslaughter instruction?*

    a. *At the close of trial, the court instructed the jury on the lesser included offense of manslaughter at the State's request. Trial counsel immediately objected to the instruction. The trial court overruled the objection upon inferring that evidence presented at trial supported the Court's findings as to the instruction. However, on direct appeal, the S.C. Supreme Court found that this was error but nonetheless a harmless one.*

9

> *Trial counsel while objecting did not detail his objection to demonstrate the "extreme unfair prejudice" of the instruction or its irreparable damage to petitioner defense at trial. The Petitioner asserts that the manslaughter instruction unduly shifted the burden of proof at trial by creating a mandatory presumption of presence and, lessened the State's burden of proof as to the element of presence. Counsel's failure to detail his objection to said instruction and its unduly prejudicial effect violated Petitioner's 5th, 6th and 14th Amendment rights.*

13. *Whether state courts erred when they failed to find on Petitioner's direct appeal, post-conviction relief, and writ of certiorari, respectively, that the cumulative errors prejudiced Petitioner in violation of his 5th, 6th, and 14th Amendment rights of the U.S. Constitution?*

    a. *Petitioner asserts that at each stage the appeal courts alleged that the cumulative effect of the trial judge's errors and trial counsel's errors prejudiced Petitioner in as much as to deny Petitioner his 5th, 6th, and 14th Amendment rights of the U.S. Constitution.*

Respondents addressed each of these grounds in their motion for summary judgment. In the Response filed through counsel, Mitchell addressed only Grounds 3, 4, 6 and 13 listed above. At the hearing held on December 15, 2006, counsel conceded that the grounds not addressed in his response had been abandoned and that any alleged attorney error in such abandoned claims should not be considered in connection with Ground 13 (cumulative error).

## Discussion

Mitchell asserts that his trial counsel was ineffective in three specific instances: (1) failing to object to the testimony of two witnesses who indicated that he was a drug dealer during their testimony; (2) failing to object to the State's bolstering of one of its witnesses; and (3) failing to request a "mere presence" charge after the trial court instructed the jury on accomplice liability ("the hand of one is the hand of all"). Additionally, Mitchell argues that the cumulative prejudicial effects of these three alleged errors entitles him to a writ of habeas corpus.

Since Mitchell filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  See Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.
>
> * * *
>
> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not

11

>apply or unreasonably refuses to extend that principle to a new context where it should apply.

Id. at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

>[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
>
>* * *
>
>[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the

> circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the AEDPA, a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. See Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

1.  Failure to Object

Mitchell alleges that his attorney was constitutionally ineffective for failing to object to evidence offered by the State.

a.  Erway

Mitchell's attorney made a motion in limine for an order prohibiting the State's witnesses from mentioning that the shooting was connected to a drug transaction. After the jury was sworn, but before the testimony began, the Court considered the motion. (App. 25). The Solicitor indicated that only Linda Erway would offer such testimony as she was in the area to buy drugs from Mitchell. (App. 26). He argued that testimony linking Mitchell to drug dealing during the murder was admissible pursuant to State v. Williams, 321 S.C. 455, 462, 469 S.E.2d 49-53 (1996) ("Under res gestae, evidence of other crimes is admissible where it is intimately connected with the pending offense, or is necessary to provide a complete story or explanation of the pending offense."). The Court made a preliminary ruling that the testimony was not

13

admissible but stated "this is a motion in limine–after I hear the case, if I see that it can come in, then I will let you know." (App. 28).

At trial, Erway testified as follows:

> I WAS JUST COMING UP ON GRAHAM [Street], I WAS IN MY CAR AND I HAD JUST DROPPED A FRIEND OFF, AND I SEEN THIS OFF-WHITE COLOR TRUCK, AND THREE BLACK GENTLEMEN, KENNY, MICHAEL [Brown] AND MEKIEL [Mitchell], STANDING BESIDE THE TRUCK. ONE OF THEM REACHED – MEKIEL STUCK HIS HAND INTO THE TRUCK LIKE HE WAS HANDING SOMEBODY SOME DRUGS. THAT'S WHAT IT LOOKED LIKE AND THAT'S WHAT IT WAS. AND THE WHITE GUY IN THE TRUCK GRABBED IT OUT OF HIS HAND AND STARTED TO SPEED OFF. AS MEKIEL REACHED INTO THE TRUCK TO TRY TO TURN THE TRUCK OFF, HE DIDN'T MAKE IT IN TIME AND THE GUY IN THE TRUCK DROVE OFF.
>
> AND AT THIS TIME I SEEN MEKIEL PULL OUT A GUN, WHICH I STATED LOOKED LIKE A 9-MILLIMETER GUN, AND STARTED SHOOTING IN THE TRUCK. SO THAT TIME KENNY STARTED – KENNY BACKED AWAY FROM THE TRUCK, THE OTHER BLACK GENTLEMAN, MICHAEL, HE STAYED IN KIND OF SIDE TO SIDE ALONG WITH MEKIEL. AND HE ALSO PULLED A GUN OUT. I CAN'T SWEAR IF I SEEN HIM SHOOT OR NOT BECAUSE I WAS SHOCKED FROM HEARING THE FIRST SHOTS. BUT I SEEN THE GUN, LIKE I SAID, I SEEN MICHAEL SHOOTING, BUT I WASN'T REALLY SURE. I SEEN THE OTHER GUY, BUT I COULDN'T SWEAR TO SAY I ACTUALLY SEEN IT GO OFF.

(App. 228-29).

Counsel did not object to this testimony. At the PCR hearing counsel testified that he was suffering from migraine headaches during the trial and that because of them he "had difficulty...focusing and dealing with things that came up unexpectedly, whether it was from the Court or from...witnesses and that sort of thing." (App. 568). According to counsel Erway's testimony "went right by me." (App. 571).

14

The PCR court noted that the trial judge did not make a final ruling on the motion in limine and that a police officer testified that a rock of crack cocaine was found inside the victim's truck. The PCR court concluded that, even though counsel felt he should have objected, there was no error because the testimony was admissible under the South Carolina Rules of Evidence to show motive, citing State v. Dickerson, 341 S.C. 391, 535 S.E.2d 119 (2000). The PCR court further found that if counsel had committed error in failing to object, Mitchell had failed to show prejudice. (App. 673-675).

In his memorandum in response to the motion for summary judgment, Mitchell also asserts that trial counsel was ineffective for failing to object to testimony of James Williams referring to a vehicle in the area as the "drug dealers car." (App. 219). This claim of ineffective assistance of counsel was not raised in the PCR nor addressed by the PCR court. It is not included in Mitchell's pro se petition, and consequently, it was not addressed by the respondents. The undersigned, therefore, concludes that the claim of ineffective assistance as it pertains to failing to object to James Williams reference to drugs is not properly before the court. Further, from the context of the testimony, it is clear that the reference is to the vehicle driven from the scene by Mitchell's co-defendant, Michael Brown.[4] (Id.).

      b.    James Williams

In addition to the above testimony by James Williams, Mitchell also asserts that his trial counsel was ineffective for failing to object because his testimony was improperly bolstered by the State. Williams was asked if he had given a written statement to the police. He

---

[4] Michael Brown is the nephew of the witness, James Williams.

15

testified that he had given such a statement and it was "the same thing I'm saying now." (Id.).[5] This claim was asserted in the PCR (App. 534), and trial counsel admitted his failure to object was error during the PCR hearing (App. 587). This claim was not addressed by the PCR court, but it was raised in the petition for writ of certiorari.

The Strickland standard applies to claims that a trial attorney failed to object to certain testimony or to the introduction of physical evidence. A petitioner must show error and actual prejudice. Keller v. Larkins, 251 F.3d 408, 419 (3d Cir. 2001) (no error in failing to object to testimony because it was admissible under state law) and Fitzgerald v. Thompson, 943 F.3d 463, 468 (4th Cir. 1991), *cert. denied*, 502 U.S. 1112 (1992) (petitioner "must demonstrate that actual prejudice flowed from his attorney's failure to object"). The PCR court found no error with respect to Erway's testimony because it was admissible to prove motive, and alternatively that Mitchell failed to show prejudice. The South Carolina Supreme Court affirmed the PCR court in Mitchell v. State, supra, stating:

> Affirmed pursuant to Rule 220(b), SCACR, and the following authority: Florida v. Nixon, 534 U.S. ___, 125 S.Ct. 868 (2005) (no presumption of prejudice); Strickland v. Washington, 466 U.S. 648 (1984) (PCR applicant must show reasonable probability that result of trial would have been different); State v. Franklin, 299 S.C. 133, 283 S.E.2d 911 (1989) (no mere presence charge where evidence does not support it).

---

[5]The existence and substance of Williams' prior statement are of some dispute. Apparently, the written statement was not produced by the State during discovery. Defense counsel obtained a copy of a purported statement by Williams which was contradictory to his trial testimony while the jury was deliberating. However, the unauthenticated statement was never made a part of the record. See State v. Williams, 330 S.C. at 199 and 498 S.E.2d at 647.

Thus, the undersigned concludes that the South Carolina Supreme Court concluded that Mitchell had failed to demonstrate actual prejudice by counsel's failure to object to the testimony of Erway and Williams.

The undersigned finds that the PCR court and the South Carolina Supreme Court properly applied the prejudice prong of the Strickland test to these claims. The PCR court discussed in detail the "extensive evidence of [Mitchell's] guilt." (App. 682). To highlight, James Wilson and Linda Erway identified Mitchell as one of the shooters. Importantly, both had previously known Mitchell which is an important factor to be considered in eyewitness identification. Robert Wilson had seen Mitchell in the area wearing a black and white stripped shirt 30 minutes before the murder. Robert Wilson also previously knew Mitchell. While he was unable to positively identify Mitchell as a shooter, he did testify that one of the shooters was wearing a black and white stripped shirt. Circumstantially, the vehicle known to be driven by only Mitchell was found at the scene, and a box of 9 mm bullets was discovered inside. These shells were forensically linked to the shooting. Last, the State presented evidence that Mitchell had contacted an individual to attempt to establish a false alibi. Based on this evidence, the PCR court concluded that "there was such overwhelming evidence of guilt, that any errors committed were harmless beyond a reasonable doubt" and that Mitchell "would not have been prejudiced by any alleged errors." (App. 684).

Mitchell challenges this conclusion by arguing that "(t)he evidence was not overwhelming–far from it." (Pet. Mem., 5). His argument is based on inconsistent statements given by the eyewitnesses, the inherent unreliability of eyewitness testimony, the lack of conclusive forensic evidence, and the fact that the jurors deliberated 10 hours before reaching a

verdict.  The undersigned finds these arguments unavailing.  These arguments have little connection with counsel's failure to object to Erway's description of what occurred at the scene as a drug transaction or the alleged bolstering of the testimony of James Williams.  The undersigned concludes that Mitchell failed to demonstrate prejudice under the Stickland standard.

    2.    Failure to Request "Mere Presence" Jury Instruction

The State's theory of the case was that Mitchell and Brown shot Judy after he snatched drugs from Mitchell and attempted to leave the scene.  Mitchell did not testify but presented an alibi defense.

The Court held a charge conference prior to closing argument (App. 312).  Based on the evidence, the state requested a charge on accomplice liability ("the hand of one is the hand of all") and a charge on voluntary manslaughter.  Counsel did not object to the accomplice liability charge, but did object to the charge on voluntary manslaughter.  The Court ruled that both requests would be granted and both were charged. (App. 357-370).  After the Court had delivered its instructions to the jury, counsel renewed his objection to the voluntary manslaughter charge and asked the Court to "reconsider and ask the jury to disregard the hand of one is the hand of all" instruction (App. 371).  The Court refused because counsel had raised no objection when the request was made by the State.  No objection or argument was made that the instruction was defective because the court did not include a "mere presence" charge in conjunction with the "hand of one is the hand of all" charge. (Id.).

Mitchell asserted in his PCR that counsel was ineffective for failing to request the "mere presence" charge. (App. 513).  The PCR court found that the claim was "wholly without merit" because "there was no evidence supporting a mere presence charge." (App. 672).  The PCR court noted that at trial, Mitchell presented no evidence that he was present during the shooting, but did not participate in the crime. (Id.).  Thus, the PCR court concluded that counsel committed no

18

error. The issue was presented in the petition for writ of certiorari to the South Carolina Supreme Court. In its memorandum, the Supreme Court affirmed the PCR court citing State v. Franklin, 299 S.C. 133, 140, 382 S.E.2d 911, 915 (1989) which held that a "mere presence" instruction must be coupled with a "hand of one is the hand of all" instruction only when the "mere presence" instruction is supported by evidence. Mitchell cites no authority to the contrary. The undersigned concludes that trial counsel committed no error in failing to request a "mere presence" instruction.

3.  Cumulative Error

Mitchell argues that the "cumulative errors of counsel" discussed above, when considered together, establish sufficient prejudice to satisfy the Strickland standard.[6] The parties cited no standard in their memorandum for assessing a claim of cumulative error. At the hearing of December 15, 2005, they agreed that the Strickland standard would apply, i.e., the errors taken as a whole would create a reasonable probability sufficient to undermine confidence in the outcome.

It must be recognized that the South Carolina courts found no error in counsel's failure to request a "mere presence" instruction. Entitlement to this instruction is purely a matter of state law. Thus, the only errors subject to a cumulative error analysis are counsel's failure to object to the testimony of Erway and Williams discussed above. Based on the strength of the evidence against Williams, counsel's failure to object and the admission of the testimony does not

---

[6]Mitchell's argument revolves around the fact that trial counsel suffered migraine headaches during the trial causing multiple error. The PCR court found that its duty was "not to determine if migraine headaches caused counsel to commit errors; but rather whether Counsel committed any errors such that counsel's performance fell below the objective standards set out in Strickland, and whether any such errors were prejudicial. The South Carolina Supreme Court found the illness created no presumption of prejudice, citing Florida v. Nixon, 534 U.S. ___, 125 S.Ct. 868 (2005).

19

demonstrate a reasonable probability that, had the objections been made and sustained, the outcome would have been different.

## **Conclusion**

Based on a review of the record, it is recommended that respondents' motion for summary judgment be granted, and the petition dismissed without an evidentiary hearing.

                                          Respectfully submitted,

                                          s/Joseph R. McCrorey
                                          United States Magistrate Judge

January 10, 2007
Columbia, South Carolina